**In the**

**United States District Court for the District of Columbia**

|  |  |  |
|---|---|---|
| Adaeze Nwosu | * | |
| | * | |
| | * | Case: 1:24−cv−00987 JURY DEMAND |
| 11630 Leesborough Circle | * | Assigned To : Reyes, Ana C. |
| Silver Spring, MD, 20902 | * | Assign. Date : 4/4/2024 |
| | * | Description: Pro Se Gen. Civ. (F-DECK) |
| *Plaintiff,* | * | |
| | * | |
| | * | |
| vs. | * | CIVIL ACTION NO. |
| | * | |
| Judge Dabney Friedrich | * | |
| Chambers of Judge Friedrich | * | |
| U.S District Court for the District of | * | |
| Columbia - 333 Constitution Avenue | * | |
| *Defendant 1* | * | |
| | * | |
| Judge Ana C Reyes | * | |
| Chambers of Ana C Reyes | * | |
| U.S District Court for the District of | * | |
| Columbia - 333 Constitution Avenue | * | |
| *Defendant 2* | * | |

**Complaint – Breach of Contract with Malice (tort)**

**1. Basis for Federal Jurisdiction**

*1.1. Diversity Jurisdiction*

This case is brought into this federal district court under "Diversity Jurisdiction,"
Whereas, Ms. Nwosu, plaintiff, is a citizen of Nigeria and, whereas Ana Reyes and Dabney Friedrich, the defendants are resident of the District of Columbia, and have a principal place of work in the United States Federal District Court District of Columbia, where the breach of contract occurred,  and whereas diversity jurisdiction exists because there is a diversity of citizenship among the parties and, Whereas the amount in controversy exceeds $75,000.00. exclusive of interest and costs.

*1.2. Provisions for Suit Under Judicial Immunity laws for defendant 1*

This case can be heard in this court because judicial immunity does not apply as judge Dabney Friedrich has no jurisdiction and/or whatsoever to deny the plaintiff <u>a basic statutory right</u> in a civil matter: A judge may be held civilly liable when acting in "clear absence of all jurisdiction" see *Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872).*

1.2.1.    In this plaintiff's case, the question posed is not a high standard or obfuscated, or subject to a judicial interpretation of law. The question is: **did the judge violate a statute that allows for a plaintiff to file her first amended complaint pursuant to Federal Rules of Civil Procedure 15(a)?**

1.2.2.    The answer is yes.

1.2.3.    It is thus a mechanical question and a simple contravention of law, whereby the judge denied the plaintiff a statutory right to amend her complaint for the first time, though timely filed, and instead dismissed her original complaint for lack of personal jurisdiction over the defendants.

1.2.4.    As it were the plaintiff's first amended complaint, the judge had an <u>obligation</u> to accept and review the plaintiff's amended complaint. She did not.

1.2.5.    The judge denied the plaintiff that statutory right without having <u>any</u> jurisdiction to do such, and did so in **clear absence of all jurisdiction.**

1.2.6.    The judge was advised of this contravention and yet persisted with reckless disregard, thus making the breach of contract action malicious and tortuous.

1.3. *Provisions for Suit Under Judicial Immunity laws for defendant 2*

This case can be heard in this court because judicial immunity does not apply as judge Reyes has no jurisdiction whatsoever to deny the plaintiff a basic statutory right of right to trial a civil matter: A judge may be held civilly liable when acting in "clear absence of all jurisdiction" see *Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872).*

1.3.1.  *Wherein* the judge dismissed "without prejudice," the plaintiff's claim, which was brought against her colleague, judge Friedrich, because she cited the plaintiff failed to state a claim upon which a relief can be granted, and then further denied, in advance, the plaintiff's ability to file a motion to amend (not that the plaintiff intended to), on the grounds that the plaintiff's case was not superficially plausible. Ironically, in order to make her prejudicial order to dismiss the plaintiff's claim, judge Reyes relied upon evidence of the plaintiff's claim, thus attesting to the actuality, not mere plausibility, of the plaintiff's statement of claim.

1.3.2.  In her order (attached as exhibit 1), judge Reye's refers to the docket sheet of CASE 23-CV-38-41-DLF, Nwosu vs. Bolduc et al, to note an appeal had already been filed.

1.3.3.  Additionally, that same docket sheet, upon which judge Reyes relied, shows a motion to vacate the intentionally tortuous order by judge Friedrich, which prematurely dismissed and close the plaintiff's complaint for lack of personal jurisdiction, though the plaintiff had timely filed a leave to amend her first complaint, which was a statutory right and not at the discretion of the judge.

1.3.4.  In brief, the plaintiff filed a LINE to judge Dabney's chambers reminding her of her contravention of law, so the action may be reversed, and not go unnoticed for negligence. Instead, the judge persisted in contravening the law, and refused to vacate the judgment, all the while deliberately suppressing the plaintiff's case.

1.3.5.  What is especially **wicked and tortuous** about judge Friedrich's actions towards the plaintiff, is that an appeal in a higher court will not be heard, until she rules upon the plaintiff's motion to vacate judgment, since the motion to vacate judgment was filed prior to the appeal.

1.3.6.    Thus, judge's Friedrich's delay is intentional, to protect another "white" woman, namely Bolduc, against whom Ms Nwosu initially brought a suit for discrimination along racial lines.

1.3.7.    In conclusion judge's Reyes assertion that the plaintiff failed to state a claim in the plaintiff's suit against judge Dabney is a mere smoke screen to deny the plaintiff a right to a hearing. In the presence of overwhelming evidence, the judge ironically, is acting in the <u>absence of all jurisdictions</u> to deny the plaintiff's statutory right, and under an illegal guise of having authority to act *sua ponte*.

## 2.  Legal Authorities for Breach of Contract

2.1. Under District of Columbia law, the elements of a valid contract are
*Enters., LLC v. Quander*, 207 A.3d 1179, 1183 (D.C. 2019); 1.1. Under District of Columbia law, the elements of a valid contract are

(i) an intent to be bound,

(ii) Agreement on all material terms,

(iii) (iii) Assumption of mutual obligations, including: an offer; an acceptance; and consideration. (See REO Acquisition Grp. v. Fed. Nat'l Mortg. Ass'n, 104 F. Supp. 3d 22, 28 (D.D.C. 2015) (applying District of Columbia law); SJ Enters., LLC v. Quander, 207 A.3d 1179, 1183 (D.C. 2019);

2.2. The basic material terms to which the parties agree by participating in a court of law, in their various roles as judge, clerk, and aggrieved plaintiff as follows:

2.2.1.    By taking an oath to become a judge in a Federal Court in the United States, Judge Reyes  and Judge Dabney acknowledge that they intended to be bound by the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, and in return, the plaintiff who brought a suit before the judge fully expected, and accepted that the judge would adjudicate her case with impartiality, and abide by the local and federal rules.

2.2.2.    However, this has not happened, instead Judge Reyes and Judge Dabney denied the plaintiff a statutory right inter alia, illegally, and intentionally, wherein she had no discretionary authority to do so.

3. **Contextual Background – Historical Facts of How [some] "white" women contribute to the oppression of women of "color":**

    3.1. Academics/ Doctoral Faculty at the Washington University of St. Louis sought to educate the general public of the ways in which white women had perpetuated systemic oppression and violence in various societies and so curated an exhibition in 2023, titled *The Wicked Women: white Women as Perpetrators of Mass Violence.* "The exhibition discusses the connection between "whiteness, gender, and violence through women carrying out events and systems of mass violence and discrimination. By looking at the Holocaust, the Namibian Genocide, the East St. Louis Massacre of 1917, chattel slavery, and white supremacy in conjunction with each other, viewers will learn the role that white women played and continue to play, in each event and system, as well as how and why these events are connected through broader systems of colonialism and racism."

    3.2. Indeed, the plaintiff can attest to the challenges facing Africans in Africa, following 19th century colonialism, is not much different than the outcomes of slavery endured by *African* -Americans, exported as commodities to the Americas.

    3.3. In both continents, conquest by division, a war tactic, was wielded against the population as a form to suppress and rule, as a people internally at war with themselves cannot revolt against their albeit "false masters." In African history, and today, mistrust thrives in the DRC, Nigeria, and South Africa, and there is even enmity among country owing to racialized colonialism and violence. In juxtaposition, the African American family unit has been destroyed by gang violence, drug addictions, arising from economic oppression, and torn homes from police brutality, false accusations of alleged rape of *"white" women,* mass incarcerations of African American males, racial weaponization of the police against black people.

    3.4. In [parts] of Africa, to avoid trade sanctions, countries did as the West told, for example Rwanda would accept piles of unwanted used clothing their people don't need, Malawi would accept nearly expired drugs and allow their citizens to be guinea pigs ,subject to "clinical" trials that would be prohibited in the USA; Ghana would accept devaluing their currency by instruction from the IMF, led by a *white woman,* against their will, and so these countries are stuck in a perpetual cycle of arrested development. In America, the public school system is so poor, the under education of African Americans is akin to a mass genocide, because people are too poorly educated to understand and then combat the depths of systemic racism and oppression carried out

on them, for example the use of zoning and housing laws to perpetuate generational poverty.

3.5. In addition to the stunting of the growth of society at large in both continents, development of the individual was stunted and opportunities for economic growth became linked to currying favor with the "whites" and playing by the "rules." Indeed, it was not the "white" people who ran after the "run-away slaves" in the re-enactment of Harriet Tubman, in the movie in the underground railroad, it was indoctrinated black people who believed they had no other choice but to remain racially oppressed. In order to get an economic advantage, and to appease the sensitivities of "white" women, the apparent custodians of appropriateness in society, black individuals, feel compelled their identities, for example, straightening their hair to be acceptable, and to not be perceived as a menace – and even still they are ostracized, denied promotions, denied admissions into colleges and terminal degrees. These are not abstract concepts, just google "white women tears."

3.6. Even then, "black" people in America who "make it" brag about having to work twice as hard, to get "half as much" as a "white" person. Yet statistically "black" people live about *half as long* from all the stress of racial oppression. For a "white" male in 2010 the life expectancy was 75 years, whereas a black male's life expectancy was 55 years.

3.7. What is equally troublesome about that statistic is that the DSM-5 codes racial stress as an "adjustment disorder" as though black people are disordered because they do not know how to adjust to "white" supremacy, which should *obviously* not be a matter of contention. **What a wicked and violent way to think**. Thus, black people cannot even seek judicial recourse for intentional infliction of emotional distress and trauma caused by years of racial abuse, because they're pain is not even acknowledged or categorized. Thus, despite the evident stress arising from systemic and overt racism that goes on daily in this country, there's nothing like racial stress for billing purposes. At best that's wanton gross negligence of the coders of DSM-5, and at worst, that's intentional discrimination because ironically, there exist named disorders for intangible "diseases" of unknown genetic origins including "stress" from gender dysmorphia, among others. Similarly, earlier on, when ADHD predominantly affected white children, it was readily diagnosed and billable for insurance, and legitimized as an excuse to obtain accommodations on standardized testing, whereas programs like affirmative action, that helped predominantly African Americans, have been repealed as they are "racist" despite America's racial oppression against "black" people.

3.8. In today's society, a racist need not re-enact a holocaust, slap their black maid publicly, hang a man on a tree as a public warning or spectacle. **A racist person simply needs to remind everyone that America is** *yet* **segregated, and** *still* **not equal, by prejudicially weaponizing the law illegitimately along racial lines, in favor of whites, and against blacks.** Ultimately, a simple test of racial prejudice can be conducted: If you want to know whether a "white" woman "sees color," try to hold a fellow "white" woman accountable, and she'll show you just how entrenched (or not) her prejudice *truly is,* by protecting her or chastising her fellow white woman.

3.9. In the plaintiff's history of doing business, when "white" women fail to suppress the plaintiff, they jettison their bouts of feminist power, and revert to the toxic masculinity, they "despise." By invoking an alpha male against the plaintiff to reprimand her and put her in "her place" it is their hope that the plaintiff would yield to their illegitimate authority and be treated as a doormat, without rights. This tactic **always** backfires, as they all soon learn **Ms Nwosu does not back down when her rights have been denied her.**

3.10.    There's a fallacy of thinking one is protected against all ill because they are in a position of power. Yet the laws of universe remind us that every action has an equal and opposite reaction. As such, if there are no external revolts by the oppressed, there are eventual internal revolts. Oft transgressions will be manifested in transgressor's children as transferred yet muted epigenetic aberrations in the form of suicidal ideations, opioids overdose, or in the perpetrators themselves with unexplained neurodegenerations, cancers etc, wherein their own body reviles them. Of course there are exceptions, not all ailments are linked to some deed/ transgression – but research proves that there is a mind, body, and soul connection in the scientific field of medicine, and indeed some therapeutic treatments involve holistic healing therapies of all three elements of health.

## 4. Contextual Background – Plaintiff's personal experience with the illegal discriminatory and suppressive tactics of Yale graduates and employees

4.1. It is the plaintiff's factual and repeated experience that Yale employees and graduates illegally racially oppress people whom they do not agree with for whatever reason and thus contributes significantly to the persistence of systemic racial oppression in the

United States. This behavior has happened on four occasions to the plaintiff alone and has formed the basis in part of civil rights legal action against Yale University.

4.2. In 2017, after a racist interview with a physician for admission into Yale medical school, the plaintiff was kept on a waitlist indefinitely for months. Later that year, the heavily publicized college admissions scandal broke out and Yale was among the schools receiving bribes from parents in exchange for their students admissions.

4.3. In 2022, on her transfer admission into the same medical school, the dean of admissions abruptly truncated the plaintiff's application using a series of overt discriminatory tactics, for which the plaintiff had to file a complaint with the US Department of Education with against the institution.

4.4. In 2023, the plaintiff's civil rights case was suspended indefinitely, and it became significant that the Educational Opportunities Section with the Civil Rights Division of the United States Department of Justice was a Yale graduate, who aided in the indefinite suspension.

4.5. Additionally, following the voicemail box for the U.S. Department of Education, Office of Civil Rights for the Boston office , which oversees civil rights contraventions in Connecticut and thus Yale, was evidently operated by Yale university, as it stated on the voicemail recording.

4.6. On the plaintiff's most recent case, a Yale graduate judge has illegally and is actively unduly delaying the plaintiff's discrimination case, even though the judge pretended as though she would be impartial.

4.7. It is thus irrefutably evident that Yale has a vast network of attorneys in public policy and governmental agencies working diligently to suppress actions against the school, and illegally oppress people who have taken actions against the school. Unfortunately, Yale keeps holding themselves out to be a shameless detractor of the law.

4.8. Apparently, this behavior by Yale to contravene the law on matters they do not agree with is widespread known among academics globally and attorneys alike. For when the plaintiff sought to transfer into the medical school, her academic advisor from her master's program in England informed her that Yale graduates had an informal pact to always protect Yale and were cushioned financially and with other non-monetary kickbacks and rewards to disincentivize them from acting against the school's interests.

4.9. Additionally, when the plaintiff sought recourse for her overt discrimination in her transfer admissions in 2022, *nearly all* the attorneys who considered taking her case backed out because they said Yale attorneys, acted as though they were above the law,

because they do whatever they like and attempt to get away with it, as in the case of Dabney Friedrich.

5. **Statement of Claim – Breach of Implied Contract against Defendant 1**

   5.1. The plaintiff avers that judge Dabney breached her contract with the plaintiff by acting tortuously and/or in bad faith to deny the plaintiff a statutory right and persist in denying the plaintiff a statutory right even after being informed of her contravention of law.

   5.2. This contravention is an [implied] breach of contract because, in bringing her case to a court and before a judge, the plaintiff agreed and expected that the judge would uphold judicial conduct and act with fairness and impartiality, i.e. act with implied and expressed covenants of good faith and fair dealing, even if the outcome is unfavorable to the plaintiff.

   5.3. However, it is not in the judge's discretion to break the law and deny the plaintiff a statutory right. Indeed, pursuant to Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364), Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities and [should have] A) Respect for Law: A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

   5.4. This goes outside the scope of the judge's duties and is a breach of contract. Similarly, against the 2nd defendant, the administrative clerk, her job is to file non-deficient filings as a matter of law, into a case and not give deference to the judge's opinion the acceptability of a filing, as a pre-requisite to determining what is permissible on the docket.

   5.5. The plaintiff thus files this case because Judge Dabney Friedrich, a graduate of Yale law school, has fulfilled the testimonies of non-Yale attorneys, and has boldly and tortuously contravened the law, with reckless disregard.

6. **Plaintiff's Affidavit in Support of Claim**

   6.1. Sometime in January 2024, the plaintiff brought a lawsuit into the United States Court for the District of Columbia against individuals and institutions who acted

discriminatorily against her on the basis of race, national origin and age. The case with Case No 23-CV-3841 (DLF) was assigned to judge Dabney

6.2. On January 29th 2024, the defendants filed a preliminary motion to dismiss the plaintiff's case due to alleged lack of personal jurisdiction

6.3. On February 20th 2024, the plaintiff amended her complaint to include more defendants, to whom the original defendants report to, and who reside within the District of Columbia.

6.4. On March 10 2024, though the plaintiff's first amended complaint is timely filed, judge Dabney denies the plaintiff's motion to amend her complaint even if she does not have discretion over it.

6.5. On March 10 2024, after having seen that the plaintiff's amended complaint and seeing clear and convincingly, that the District of Columbia would have appropriate personal jurisdiction over the defendants, judge Dabney strategically denies the plaintiff her right to amend her complaint.

6.6. On March 10 2024, after dismissing the plaintiff's case, impetuously closed the plaintiff's case.

6.7. On March 13th the plaintiff notified Dabney Friedrich of this statutory contravention and filed a motion to vacate judgement (exhibit 1).

6.8. On March 13th the plaintiff filed a second motion for recusal, which the second defendant did not put on the docket (exhibit 2).

6.9. On or about March 14th the 2nd defendant said she sent the plaintiff's motion for recusal to the judge's chambers because she need the permission of Dabney Friedrich to docket certain filings now the case was closed.

6.10. On or about March 15th 2024, the plaintiff filed a notice of appeal to the Circuit court,

6.11. On March 18th 2024, the plaintiff filed a line filing, stating the rules of appeal and reminding Judge Dabney that since her motion to vacate judgement was filed before the appeal, the plaintiff's appeal won't be heard until she rules (exhibit 3).

6.12. As of 22nd March 2024, more than 72 hours later the plaintiff's line filing is still not on the docket sheet.

6.13. The plaintiff thus brings this suit against the second defendant, the case administrator who aided and abetted the judges' wicked and malicious actions against the plaintiff by protecting her boss's interests by selectively choosing what may be filed into the docket.

6.14.   The plaintiff has suffered monetary and financial harm as her case has been unjustly, illegally and strategically delayed by Judge Dabney Friedrich and her accomplice.

## 7. Statement of Claim – Breach of Contract Against Defendant 2

7.1. This case marks a growing chain of ""white"" women attempting to suppress the plaintiff's right to judicial recourse for justice, equitable treatment in society and fairness. The plaintiff first brought a suit against Magdalit Bolduc, a Catholic nun, who evidently discriminated against the plaintiff while she was on pilgrimage tour in Israel. Much to the nun's chagrin and in addition to the unfounded disdain she had for the plaintiff on the basis of race and age, she despised the plaintiff for an interracial relationship she fostered on the trip.

7.2. On March 10 2024 Judge Dabney, trying to protect her fellow "white" woman, contravened the law and promptly dismissed and buried the plaintiff's case with case No 23-CV-3841-DLF, citing lack of personal jurisdiction, Judge Dabney disregarded the plaintiff's first amended complaint on February 20 2024 to add significant defendants, who were resident in the District of Columbia, and would have surely tipped the scale unequivocally, if there ever was a legitimate doubt, to bring the suit into jurisdiction in the District of Columbia.

7.3. After suing Judge Dabney for her contravention with case No 24-CV-878-ACR, a summons was issued about the 26th of March 2024. The suit landed in the hands of Judge Reyes, who then promptly dismissed and closed the case on April 1 2024 , even before the defendants had been served a copy of the summons.

7.4. On April 1 2024, in her order dismissing the plaintiff's suit against Judge Dabney, judge Reyes cited the plaintiff failed to state a claim upon which a relief can be granted. However in making the order, judge Reyes grossly contradicted herself to the point of confabulation. For example, in stating that the plaintiff failed to state a claim, because it was implausible, she *ironically,* cited the very evidence which she inferred to not exist (i.e. the entire docket sheet, plaintiff's records, judges orders etc), and dismiss *sua ponte* the plaintiff's suit.

7.5. For avoidance of doubt, and the claim was backed not just by an affidavit by the plaintiff, but also by the evident docket sheet upon which judge Reyes relied, that she inferred did not exist.

7.6. In her order she also stated none of the reliefs could be granted, and then erroneously added her own relief, not anywhere stated in the plaintiff's complaint, that the plaintiff sued, in order that Judge Reyes could review Judge Dabney's errors.

7.7. This erroneous interpretation was so tortuous because the plaintiff's reliefs were so clear, so well grounded in law, that the judge had to confabulate reliefs on her own accord, in order to dismiss the plaintiff's case.

7.8. Ultimately, Judge Reyes unlawfully denied the plaintiff a right to trial, in an attempt to protect her "white" female colleague.

7.9. Defendant 2 cites that monetary reliefs are not obtainable under judicial immunity, but the plaintiff's claim states that the judge Dabney were so clearly outside of the scope of her judicial duties, and **absent of all jurisdicition,** that the plaintiff **is entitled to monetary compensation by law for the tort of a breach of contract.** In fact the while the Supreme Court of the United States has not yet provided a test to determine when it is appropriate to award punitive damages, the Court did indicate to the lower courts that they should look for reprehensibility and acceptable punitive-to-compensatory damages ratio in punitive damages consideration in *State Farm v. Campbell,* 538 U.S. 408 (2003). Thus judge Reyes assertions that the plaintiff did not state a claim upon which a relief can be granted is simply unavailaing.

7.10.    As a result of the judges' **frivolous** orders, which are clearly without any legal grounds, and contravene the law in the absence of all jurisdictions and **only serve to prejudice the plaintiff, a woman of "color,"** the plaintiff has incurred monetary losses associated with the filing of her suit.

7.11.    ADDITIONALLY, the plaintiff cannot file an appeal to a higher court, and if filed, it cannot be heard, until the judges first rule on their erroneous judgements pursuant to rule Fed Rule Civil Procedure 60, since those were filed first with the court. By the judges asking the plaintiff to file an appeal to a higher court as her only relief, they **yet lie to conceal the truth** and stall the plaintiff's cases, and in fact make the plaintiff waste money: these actions by supposed learned judges are a tortuous breach of contract.

7.12.    **As a result of this breach of contract (tort), the plaintiff is entitled to monetary compensation for actual losses and punitive treble damages to prevent further contraventions of law by others. Treble damages can allowed for intentional and outrageous conduct, which is exactly how the judges are behaving with reckless impropriety to protect each other, instead of the public.**

8. **Conclusion**

8.1. These lawyers, turned judges, Judge Reyes and Judge Dabney took an oath to avoid impropriety and adjudicate without prejudice; their office does not permit "case shopping" whereby the close cases that make them uncomfortable, or to which they simply don't agree, without any legal grounds or backing. Just like plaintiffs should not "judge shop," judges should also not "case shop." Creating fictitious and illegal reasons to close a case with nonsensical legal jargon, is outside of their judicial duties, and constitutes a tortuous abuse of power.

8.2. Similarly, protecting their colleagues, in the wake of contraventions of law is not only hypocritical, but is **unethical**. These judges sit in cases and determine the lives of strangers they don't know, sometimes dolling sentences that cripple innocent parties financially. Judicial discretion to interpret the law is neither an opportunity nor excuse in insert personal prejudices to safeguard systemic oppression and promote the interests of "white" supremacy.

8.3. Similarly, judicial office is not an excuse to frivolously and vexatiously dismiss the legitimate filings of a plaintiff's complaint, and cause innocent plaintiffs to keep incurring filing expenses, all the while suppressing and stalling their cases, as they seek judicial recourse.

8.4. Such behavior is especially reprimandable because it is not only inherently discriminatory and illegal but because the very "construct" these judges are trying to protect is intangible. Whiteness is a sadistic racial construct that nonsensically excludes "white" from being a color, whereas it is in the English language, in order to systemically divide and oppress along racial lines. "White" people are "colored" too.

8.5. Racism is a public health in America, for which the perpetrators need treatment and are not suitable to hold public office or adjudicate over people who have more pigmentation in their skin.

8.6. It would be unfortunate, and fulfilling of a stereotype, if there is no "white" woman in the district court for the Federal Republic of America, in the nation's capital who is morally astute to truly be color blind and uphold justice, irrespective of the degree of skin pigmentation.

9. **Relief against defendants**

9.1. Wherefore in view of the judges torts of breach of contract, the plaintiff requestives compensatory and punitive damages in excess of $10,000,000.00 Ten million dollars. The argument for the plaintiff's reliefs is as follows: "In such cases where [contraventions of law have occurred] surreptitiously and/or systematically, compensatory damages will not provide adequate deterrence, since wrongdoers will be able to continue to engage inconduct where the social costs exceed the social benefits [as has occurred in the plaintiff's case]. Punitive damages are necessary to pick up the slack for undetected wrongdoers. Under this view, the goal of punitive damages is to ensure that the award of compensatory damages is supplemented by an amount sufficient to cause wrongdoers to internalize the costs of their actions [...] punitive damages would then consist of the excess of total damages over compensatory damages – see The Yale Journal  Vol 107:2071, page 2082.

9.2. The judges should be reported to the judicial disabilities to be benched/relieved of their duties as district court judges as they are unfit to adjudicate without prejudice, and instead would rather risk their office to protect wanton transgressions of law perpetuated by their colleagues. There is no doubt, that if black people did this to a "white" person, and a "white" person found out, they would have been suspended on the spot.

9.3. Just as policies exist to prevent frivolous filings by plaintiffs, such as seeking leave of court to make a filing, for plaintiffs who file and dismiss meritless cases, policies within the judiciary should be enacted to protect plaintiffs from legally meritless and prejudiced case dismissals and "case shopping" by judges, as both are equally in the public interest. Noone, not even judges or presidents are above the law.

9.4. For the court and judges to advocate for laws and amendments akin to the Ku Klux Klan Act of 1871 and Anti-Trust acts, to prevent institutions with large endowments, such as Yale, from using their influence to systemically oppress and influence the judiciary, which ought to remain impartial. Moreover, judges' associations with organizations that act discriminatorily are illegal and unacceptable: it violates canon 2(c) of Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 351-364): Nondiscriminatory Membership. "A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin." So far, Yale is an organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

9.5. The plaintiff prays for all other reliefs the court may seem fit, in favor of the plaintiff.

## 10. Certification & Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 2 April 2024

Ms Adaeze Nwosu
(Plaintiff)
11630 Leesborough Circle,
Silver Spring,
MD, 20902